# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Child Evangelism Fellowship of
Minnesota,

                Plaintiff,                **MEMORANDUM OPINION
AND ORDER**

   v.                          Civil No. 08-5165 ADM/AJB

Elk River Area School District #728,

                Defendant.

_____

Stephen M. Crampton, Esq., Liberty Counsel, Lynchburg, VA, on behalf of the Plaintiff.

Paul Engh, Esq., Engh Law Office, Minneapolis, MN on behalf of the Defendant.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge on Plaintiff Child
Evangelism Fellowship of Minnesota's ("CEF") Motion for Preliminary Injunction [Docket No.
6] and Defendant Elk River Area School District # 728's ("Elk River") Motion to Dismiss
[Docket No. 12].  CEF seeks to enjoin implementation of Elk River's policy of allowing only
organizations identified as "patriotic organizations" under 20 U.S.C. § 7905(b)(1) and Title 36 to
distribute literature and attend district Open Houses.  For the reasons set forth below, the
preliminary injunction is granted and the motion to dismiss is denied.

## II. BACKGROUND

CEF is a non-profit religious organization that sponsors the Good News Club, an
organization for children that encourages learning, spiritual growth, and service to others by
providing religious and moral education through lessons from the Bible.  Verified Compl.
[Docket No. 1] ¶¶ 10, 12, 13.  The Good News Club is open to all children between the ages of

five and twelve regardless of their religious beliefs.  Id. ¶ 15.  Meetings for the Good News Club

are held on elementary school campuses, and the children are taught biblical principles, moral

values, character qualities, respect for authority, relationships, character development, and

important community issues.  Id. ¶¶ 18, 21.

Elk River regulates the distribution of official, nonschool-sponsored materials pursuant to

District Policy 1011,4.1, which provides:

> Material for distribution by giving the students for the students or
> for delivery to parents shall be restricted to materials directly
> relating to official and school-sponsored activities and materials
> directly in support of school activities.  Materials from organizations
> that fall within the category of "designated patriotic youth
> organizations" as defined by the No Child Left Behind Act will also,
> subject to staff review, be eligible for distribution to parents and/or
> directly to students.

Id. ¶ 25.  Elk River allows "designated patriotic organizations", including the Boy Scouts of

America, to distribute literature at the district Open Houses and on school bulletin boards.  Id. ¶¶

26, 27, 30.  Two Open Houses are held at the beginning of each school year, and parents are

invited to meet teachers and receive information about various programs available to the

students.  Id. ¶¶ 34, 35.

On August 28, 2007, Sharilyn Nydam ("Nydam"), a District Director for CEF, met with

Elk River Assistant Superintendent Jana Hennen-Burr ("Hennen-Burr") to discuss allowing CEF

to participate in the Open Houses.  Id. ¶ 37.  Hennen-Burr told Nydam that CEF would not be

allowed to participate in the Open Houses unless it could prove it was designated a patriotic

organization under the No Child Left Behind Act.  Id. ¶ 38.  Because CEF is not a patriotic

organization listed in Title 36 of the United States Code, Elk River did not allow CEF to

participate in the 2007 Open Houses.  Id. ¶¶ 40, 43.  In 2008, CEF again asked to be allowed to

distribute literature at the Open Houses, and this request was also denied.  Id. ¶ 44.  CEF alleges

not being allowed to distribute literature through the school and attend the Open Houses has

caused participation in the Good News Clubs in the district to markedly decline.  Id. ¶ 45.  This

action followed.

### III. DISCUSSION

**A.      Preliminary Injunction**

The Eighth Circuit held in Dataphase Systems, Inc. v. C L Systems, Inc. that a district

court deciding a motion for a preliminary injunction must balance four factors: (1) the likelihood

of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the

absence of relief; (3) the balance between the harm to the movant and the harm that the relief

would cause to the other litigants; and (4) the public interest.  640 F.2d 109, 114 (8th Cir. 1981)

(en banc).  "A preliminary injunction is an extraordinary remedy, and the burden of establishing

the propriety of an injunction is on the movant."  Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th

Cir. 2003) (citation omitted).

**1.      Likelihood of Success on the Merits**

In First Amendment cases, courts first determine the likelihood of success on the merits

because if it is shown with likelihood that a deprivation of First Amendment freedoms occurred,

such a showing is often determinative under the Dataphase analysis.  See Phelps-Roper v. Nixon,

545 F.3d 685, 690 (8th Cir. 2008).  CEF argues that Elk River's policy contravenes the Supreme

Court's holding in Good News Club v. Milford Central School, 533 U.S. 98 (2001), because

under the policy, CEF is excluded on the basis of its religious viewpoint.  Elk River maintains

that it does not consider viewpoint and limits access to the listed groups, such as the Boy Scouts,

when it is compelled to do so by Congress pursuant to 20 U.S.C. § 7905(b)(1).

      a.     **The <u>Milford</u> Decision**

      The Milford Central School ("Milford") adopted a policy that district residents could use the school for "instruction in any branch of education, learning or the arts" and for "social, civic and recreational meetings and entertainment events, and other uses pertaining to the welfare of the community, provided that such uses shall be nonexclusive and shall be opened to the general public." <u>Id.</u> at 102.  The sponsors of the local Good News Club asked Milford if it could hold weekly after school meetings in the school cafeteria. <u>Id.</u> at 103.  Milford denied the request because the policy prohibited use by individuals or organizations for a religious purpose. <u>Id.</u> The district also asked for clarification of the Club's activities and after reviewing submissions from the Club's attorneys, concluded that the Club's activities were not "a discussion of secular subjects such as child rearing, development of character and development of morals from a religious perspective, but were in fact the equivalent of religious instruction itself." <u>Id.</u> at 104.

      The Supreme Court began its analysis by determining the nature of the public forum. The parties agreed and the Court accepted that Milford had created a limited public forum. Thus, Milford could be justified "in reserving [its forum] for certain groups or for the discussion of certain topics" but could not discriminate against speech on the basis of viewpoint, and the restriction must be "reasonable in light of the purpose served by the forum." <u>Id.</u> at 106-07.  The Court found that Milford excluded the Good News Club on the basis of the religious nature of its viewpoint and did not reach the issue of whether the policy was unreasonable in light of the purposes served by the forum. <u>Id.</u> at 107.  It found that something that is "quintessentially religious" or "decidedly religious in nature" can also teach morals and character development

4

from a particular viewpoint.  Id. at 111.  Under the Free Speech Clause there is "no logical difference in kind between the invocation of Christianity by the Club and the invocation of teamwork, loyalty, or patriotism by other associations to provide a foundation for their lessons." Id.

### b.    The Elk River Policy and the Boy Scout Act

Elk River argues that its policy does not consider viewpoint, but rather is dictated by Congress's enactment of the Boy Scouts of America Equal Access Act ("Boy Scout Act"), 20 U.S.C. § 7905(b)(1), which requires schools to include patriotic organizations designated by statute as a condition to the receipt of federal education funds.  The Boy Scout Act provides:

> Notwithstanding any other provision of law, no public elementary
> school, secondary school, local education agency, or State education
> agency that has a designated open forum or a limited public forum
> and that receives funds made available through the Department shall
> deny equal access or a fair opportunity to meet to, or discriminate
> against, any group officially affiliated with the Boy Scouts of
> America, or any other youth group listed in Title 36 of the United
> States Code (as a patriotic society), that wishes to conduct a meeting
> within that designated open forum or limited public forum, including
> denying such access or opportunity or discriminating for reasons
> based on the membership or leadership criteria or oath of allegiance
> to God and country of the Boy Scouts of America or of the youth
> groups listed in Title 36 of the United States Code . . . .

20 U.S.C. § 7905(b)(1).  In addition to the Boy Scouts, Congress has listed other organizations under Title 36 including, Big Brothers-Big Sisters of America, Boys & Girls Club of America, Future Farmers of America, Girl Scouts of America, Little League Baseball, and the Society of American Florists and Ornamental Horticulturists.  The House Conference Report states that the purpose of the Boy Scout Act is to "address access to and use of school facilities by the Boy Scouts of America or of other groups that prohibit the acceptance of homosexuals, or individuals

who reject the Boy Scouts' or the youth group's allegiance to God and country."  H.R. Rep. No.

107-334, at 1600 (2001) (Conf. Rep.).[1]

Elk River states that its goal in adopting its policy was to avoid discrimination.  Def.'s

Mem. in Opp'n to Prelim. Inj. [Docket No. 16] at 2.  It maintains that CEF or religious

viewpoints were not the target of this policy.  Rather, in an effort to ensure necessary federal

education funds, it "took the only path open to it, namely, closing its forum except to

organizations to whom No Child Left Behind says it must grant access."  Id. at 3.

            **c.**        **Milford and the Boy Scout Act**

The parties agree that Elk River has created a limited public forum.  As such, it can

designate that forum "for certain groups or for the discussion of certain topics." Milford, 533

U.S. at 106.  The policy may not, however, discriminate against speech on the basis of

viewpoint, and the restriction must be "reasonable in light of the purpose served by the forum."

Id. at 106-07.

The Court finds that the Elk River policy discriminates against CEF on the basis of its

viewpoint.  While the Court sympathizes with Elk River's frustration in attempting to find a

viewpoint neutral way to comply with the requirements of the Boy Scout Act, the nature of the

Act itself classifies organizations as either "patriotic" or not.  Accordingly, the inclusion on or

---

[1] The Boy Scout Act conditioned receipt of federal education funds on allowing access to groups, like the Boy Scouts, that discriminate against homosexuals in the wake of the Supreme Court's decision in Boy Scouts of America v. Dale, 530 U.S. 640 (2000) and the ensuing removal of Boy Scouts troops from schools that prohibited discrimination on the basis of sexual orientation.  See 147 Cong. Rec. H2618 (daily ed. May 23, 2001) (statement of Rep. Hilleary); 147 Cong. Rec. S6249 (daily ed. June 14, 2001) (statement of Sen. Helms).  The Boy Scout Act was passed in response to Dale and not, as Elk River argues, in response to the holding in Milford.

exclusion from the list constitutes discrimination based on whether an organization is appropriately "patriotic."  The difficulty for Elk River is that even though it has not discriminated on the basis of viewpoint, Congress has done so by classifying certain organizations as patriotic.  This classification endorses a certain patriotic viewpoint while leaving other viewpoints, that may be equally patriotic, off the list.  And as the Supreme Court has found, The Good News Club and the Boy Scouts promote the same values and ideas, but they do so from different viewpoints.  See id. at 111.  Although Elk River asserts the Boy Scout Act compels its course of action, the holding in Milford dictates that if Elk River allows the Boy Scouts, or any other listed "patriotic youth group", access to its limited public fora but does not allow the Good News Club access, it has violated the Free Speech Clause of the First Amendment.

Even if the school's policy were viewpoint neutral, it would still fail because it is not reasonable in light of the purpose served.  Elk River's explanation for why it has adopted this policy is that it is "compelled" to do so by the Boy Scout Act.  This statement is based on an incorrect interpretation of the Act.  The receipt of federal funds "requires" Elk River to allow access to the Boy Scouts only to the extent it has created a limited public forum.  Elk River would still receive federal funding if it decided to close the Open Houses to all non-school groups, including the Boy Scouts, and limit distribution of literature to only internal school programs.  Elk River is not required to choose between accepting the Boy Scouts or rejecting federal funding, but if it opens a limited public forum, then it must admit the Boy Scouts to receive funds.  Thus, this policy is not reasonable in light of Elk River's stated purpose since it is not, in fact, compelled to admit the Boy Scouts.  For these reasons, CEF is likely to succeed on

the merits, and, therefore, the first <u>Dataphase</u> factor weighs in favor of granting the preliminary injunction.

### 2.    Threat of Irreparable Harm

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976); <u>see also</u> <u>Phelps-Roper</u>, 545 F.3d at 690.  Because CEF has been denied its First Amendment rights based on its viewpoint, this deprivation constitutes irreparable harm under the second <u>Dataphase</u> factor.

### 3.    Balance of the Harms

As discussed above, CEF is irreparably harmed by the loss of its First Amendment rights. On the other hand, the harm that Elk River will experience if the policy is enjoined is that its policy would be voided, and it would need to draft a new policy consistent with the First Amendment.  In the interim, it would either have to allow all non-school groups with a patriotic message access to the Open Houses if they request it and provide them with the opportunity to distribute literature through the school or close access to all non-school groups.  These requirements would require additional administrative time but not an inordinate amount.  It is apparent that the potential harm to Elk River is significantly less than the abridgement of CEF's constitutional rights.  For these reasons, the balance of harms favors CEF.

### 4.    Public Interest

The protection of constitutional rights, and specifically the First Amendment, is always in the public interest.  <u>See</u> <u>Roper-Nixon</u>, 545 F.3d at 690.  In this case, the public, specifically the tax base of Elk River, has a pecuniary interest that will be effected by the potential

8

administrative costs that might be required by allowing CEF and other such groups access to the school.  But these relatively minimal costs do not outweigh the public interest in First Amendment expression.  Because the <u>Dataphase</u> factors weigh in favor of CEF, the preliminary injunction is granted.

**B.     Elk River's Motion to Dismiss**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. <u>Hamm v. Groose</u>, 15 F.3d 110, 112 (8th Cir. 1994); <u>Ossman v. Diana Corp.</u>, 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  <u>Ossman</u>, 825 F. Supp. at 880.  Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief."  A pleading must contain "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).

Elk River's motion is premised upon the argument that the Boy Scout Act has rendered <u>Milford</u> inapposite in this case.  Pl.'s Mem. in Supp. of Mot. to Dismiss [Docket No. 14] at 1. The Court disagrees.  As explained in the previous section, <u>Milford</u> controls even in light of the Boy Scout Act, and CEF is likely to succeed on the merits.  <u>See</u> Part (B)(1)(c).  Elk River's Motion to Dismiss is, therefore, denied.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Christian Evangelism Fellowship of Minnesota's Motion for a Preliminary Injunction [Docket No. 6] is **GRANTED** and Defendant Elk River Area School District #728's Motion to Dismiss [Docket No. 12] is **DENIED**.

BY THE COURT:

_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 6, 2009.